IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 14-cv-03061-LTB-NYW

JEANEA LUCERO,

       Plaintiff,

v.

TERUMO BCT, INC.,

       Defendant.
_____

**ORDER**
_____

This matter is before me on Defendant Terumo BCT, Inc.'s ("Terumo") Motion to Dismiss Second and Third Claims for Relief [Doc. # 11]. Plaintiff Jeanea Lucero, a former Terumo employee, brings claims against Terumo under the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"), the Colorado Anti-Discrimination Act, Colo. Rev. Stat. § 24-34-401, *et seq.* ("CADA"), and Colorado common law. I have reviewed the parties' submissions. Oral argument would not materially assist me in deciding the motion. I have jurisdiction under 28 U.S.C. §§ 1331 and 1367.

As I explain below, I **GRANT IN PART AND DENY IN PART** the motion. I reject Terumo's argument that the Court lacks subject matter jurisdiction over Ms. Lucero's claim for failure to provide reasonable accommodations because Ms. Lucero did not exhaust her administrative remedies as to that claim. I agree with Terumo that no claim for "failure to engage in interactive process" exists under the ADA or the CADA. I also agree that Ms. Lucero has not adequately pleaded her common law claim for negligent hiring, retention, and supervision. I

therefore dismiss those two claims for failure to state a claim upon which relief can be granted.

## I. Background

The following facts are drawn from allegations in Ms. Lucero's complaint unless otherwise indicated. Ms. Lucero lives in Denver, Colorado. Compl. ¶ 3 [Doc. # 1]. Terumo is a corporation that has its "principal address" in Lakewood, Colorado. *Id.* ¶ 5. Ms. Lucero began working for Terumo in May 2004 as an "assembler," and worked there until she was terminated in August 2013. *Id.* ¶¶ 7, 32. She indicated in the intake questionnaire she filed with the U.S. Equal Employment Opportunity Commission ("EEOC") that she was still an assembler at the time of the alleged discrimination. Ex. 3 to Resp. at 1 [Doc. # 16-3]. Neither party has indicated that she held any other title during her roughly nine year tenure at the company.

In July 2009, Ms. Lucero was experiencing back pain, which doctors determined was caused by a problem with her sciatic nerve. Compl. ¶ 9 [Doc. # 1]. They prescribed physical therapy, which allowed her to "work normally." *Id.* In May 2013, Terumo moved Ms. Lucero to a "similar position" in which she apparently remained an assembler but was required to "stand a significant majority of the day." *Id.* ¶ 10. The prolonged standing led Ms. Lucero to experience severe back pain and, ultimately, episodes of paralysis at night. *Id.* ¶¶ 11-12. The next month, she was diagnosed with spinal stenosis. *Id.* ¶ 13. Her doctor imposed work restrictions precluding her from working more than four hours a day, precluding her from standing for more than one of those four hours, and requiring her to take a five minute break each hour *Id.* ¶ 14; Ex. 3 to Pl.'s Resp. at 5 [Doc. # 16-3].

Ms. Lucero alleges that on various occasions in July 2013 she attempted to persuade Terumo to allow her to "move back to her previous open sitting position," asserting that doing so would "resolve many issues" she had with the standing position. Compl. ¶ 21 [Doc. # 1]. A

supervisor eventually allowed Ms. Lucero to "work in a sitting position to label bags." *Id.* ¶ 23. Within five minutes of starting this position, however, Ms. Lucero was summoned by human resources personnel, who indicated that "the work restrictions given by [Ms. Lucero's] [d]octor would not be approved." *Id.* ¶¶ 23-26. Ms. Lucero says that she "pleaded with them to let her do the sit down position that was already open," but "they did not listen, threaten[ed] termination and coerced [Ms. Lucero] to fill out [a request for] Short Term Disability." *Id.* ¶ 26. The company "sent her home," indicated that it would not allow her to work with the restrictions imposed by her doctor, and indicated that a doctor would need to "release her to work fully" before she could return to work. *Id.* ¶¶ 27-30. It appears Terumo allowed Ms. Lucero at least some leave under the Family Medical Leave Act ("FMLA"), although she alleges that Terumo was obstructive in handling her FMLA request. *Id.* ¶¶ 14-20, 29.

On July 24, 2013, Ms. Lucero filed her intake questionnaire with the EEOC. Ex. 3 to Resp. [Doc. # 16-3]. She claimed that Terumo discriminated against her based on her disability, which she identified as spinal stenosis. *Id.* at 1-3. She wrote that Terumo "would not comply with [her doctor's] [w]ork restrictions and [r]educed work hours" and that she felt her "job [was] being threatened if [she didn't] get better by the time they want[ed] [her] to." *Id.* at 2. She described how, when she asked for accommodation of these restrictions, Terumo "sent [her] home on full FMLA" and told her "to apply for short-term disability," but not before allowing her to work for five minutes at "a sitting station to label some bags." *Id.* at 3, 5.

On August 15, 2013, after Ms. Lucero had exhausted her FMLA leave, Terumo terminated her employment. Compl. ¶¶ 29, 32 [Doc. # 1]. On January 21, 2014, Ms. Lucero filed a joint charge of discrimination with the EEOC and the Colorado Civil Rights Division ("CCRD"). Ex. 1 to Resp. [Doc. # 16-1]. She reiterated many of the facts she provided in her

intake questionnaire, including that she asked Terumo multiple times to accommodate her work restrictions, but they "denied or ignored [her] requests" and ultimately terminated her. *Id.* at 1. On August 14, 2014, the CCRD issued Ms. Lucero a "notice of right to sue" letter. Ex. A to Compl. [Doc. # 1-1]. On September 29, 2014, the EEOC issued its notice of right to sue letter. Ex. B. to Compl. [Doc. # 1-2].

On November 12, 2014, Ms. Lucero filed this lawsuit. Her complaint contains three counts. The first count, which Terumo does not attack, alleges disability discrimination in violation of the ADA and/or the CADA; Ms. Lucero alleges that Terumo "refused to continue to [employ] Plaintiff because of her disability." Compl. at 8-10 [Doc. # 1]. The second count alleges failure to provide reasonable accommodations in violation of the ADA and/or the CADA. *Id.* at 10-11. The parties also agree that this count purports to assert a claim for "failure to engage in interactive process," referring to the process by which employers determine reasonable accommodations for certain disabled employees under the ADA and the CADA. *Id.; see infra* § II.B (describing the interactive process). The third count alleges common law negligent hiring, retention, and supervision. Compl. at 11 [Doc. # 1]. Terumo filed the instant motion on January 6, 2015.

## II. Analysis

### A. Exhaustion of Administrative Remedies as to Failure to Accommodate Claim

Terumo argues that Ms. Lucero did not raise the basis of her failure to accommodate claim in the charge of discrimination she filed with the CCRD and the EEOC and, therefore, that she has not exhausted administrative remedies as to that claim. It appears that Ms. Lucero worked at all relevant times as an assembler at Terumo, sometimes in a "sitting" position and sometimes in a "standing" position. Terumo has not asserted otherwise. In her complaint, Ms.

Lucero bases her failure to accommodate claim on her requested "move back to her previous open sitting position" from a standing position to which she had been transferred by the time her doctor imposed restrictions on her ability to stand. Compl. ¶¶ 21, 26 [Doc. # 1]. She alleges this accommodation "would have worked and would have been reasonable" in view of those restrictions. *Id.* ¶¶ 26, 33. She claims that she told Terumo's FMLA administrator that she "could do the sit down positions," that she had "worked at [them] for years," and that "they were within her restrictions." *Id.* ¶ 28. She adds that, while her supervisor "would periodically put [her] in sitting positions, and [she] could then work the whole day," her supervisor conveyed that she "would never be able to have [her] there permanently." *Id.* ¶ 21.

A court may dismiss a claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A plaintiff's failure to exhaust administrative remedies precludes a court from having subject matter jurisdiction over claims brought under both the ADA, *Jones v. United Parcel Serv., Inc.*, 502 F.3d 1176, 1183 (10th Cir. 2007), and the CADA, *City of Colo. Spgs. v. Conners*, 993 P.2d 1167, 1169 n.3 (Colo. 2000). An ADA "claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC." *Jones*, 502 F.3d at 1186 (citation omitted). Courts "liberally construe charges filed with the EEOC in determining whether administrative remedies have been exhausted as to a particular claim." *Id.* A CADA claim likewise must be "based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the [CCRD]." Colo. Rev. Stat. § 24-34-306. Neither the parties nor I have identified any material way in which the ADA and CADA standards differ. *See Lee v. Spectranetics Corp.*, No. 12-CV-00633-WYD-MEH, 2013 WL 5416972, at *4 (D. Colo. Sept. 27, 2013) ("The ADA and the CADA are, essentially, parallel statutory schemes that address disability discrimination. . . .

Thus, Colorado courts rely upon ADA case law in analyzing CADA claims.").

In her charge of discrimination, Ms. Lucero stated that she requested, among other things, that Terumo accommodate her inability to "stand[ ] . . . longer than one hour," but Terumo refused or ignored her requests. Ex. 1 to Resp. [Doc. # 16-1]. In addition, in a letter attached to the charge, Ms. Lucero described a conversation in which her supervisor expressed his understanding that Ms. Lucero's doctor "[w]ants [her] only working four hours a day [which] means [she] can do the job but just for four hours." Ex. 2 to Resp. at 1 [Doc. # 16-2]. She corrected his apparent misunderstanding that she was able to continue working in a standing position if her hours were reduced, responding that "no[,] there are work restrictions," which would include her inability to stand for more than an hour. *Id.* "After that," she recalled, "[her] areas lead Marbella Torres took [her] out to the floor and put [her] at a sitting station to label some bags," where she remained until she was summoned by human resources personnel and sent home. *Id.* at 1-2.

The charge thus conveys that Ms. Lucero told Terumo that she could not stand for more than an hour a day; asked Terumo to accommodate that restriction; told Terumo that she could not continue do her job in a predominantly standing position; and even worked for a brief period in a sitting position. This information surely would have prompted reasonable investigators to look into whether transferring Ms. Lucero to a "sitting" position—or modifying her job duties, as her request might or might not be more accurately characterized—was a reasonable accommodation. The cases cited by Terumo are inapposite. See Mot. at 4-5 [Doc. # 11] (citing *Jones*, 502 F.3d 1176; *Andrews v. GEO Grp., Inc.*, 288 F. App'x 514 (10th Cir. 2008)). In *Jones*, the Tenth Circuit concluded that the plaintiff's failure to accommodate claim was not within the scope of his charge of discrimination because he answered in the negative when asked

if he "advise[d] [his] employer that [he] needed an accommodation" and he did not include in his charge any other "facts that would prompt an investigation of [his] claim that [his employer] failed to accommodate him." 502 F.3d at 1187. By contrast, Ms. Lucero indicated in her charge that she advised her employer of her need for an accommodation. She also included facts describing the nature of that accommodation, as discussed above.

In *Andrews*, the Tenth Circuit again concluded that the plaintiff's failure to accommodate claim was not within the scope of her charge of discrimination. The plaintiff was taking the steroid prednisone for lupus. 288 F. App'x at 515-16. She worked in a detention facility where there was an outbreak of chicken pox, to which the prednisone made her particularly susceptible. *Id.* She alleged in federal court that "was denied the reasonable accommodation of having detainees brought to the visitation area so that she could avoid any exposure to the chicken pox." *Id.* at 517-18 (quotations omitted). In her charge of discrimination, she alleged "failure to accom[m]odate medical." *Id.* at 516-17. But she said nothing of the accommodation of bringing detainees to the visitation area. *Id.* at 516-18. Rather, she complained that while coworkers "received worker's compensation and were taken to [urgent care] right away," she was "placed on leave without pay." *Id.* at 516. By contrast, the facts in Ms. Lucero's charge of discrimination make clear that she sought a job modification or transfer to accommodate her inability to stand for more than an hour each day.

For these reasons, I conclude that Ms. Lucero exhausted her administrative remedies as to her failure to accommodate claim and I deny this aspect of Terumo's motion.

**B. "Failure to Engage in Interactive Process" Claim**

Ms. Lucero asserts that "failure to engage in interactive process" is an "independent basis for relief" under the ADA, and presumably the CADA, and maintains that the second count of

her complaint pleads such a claim in addition to her failure to accommodate claim. Resp. at 9 [Doc. # 16]. Terumo seeks dismissal of this claim, arguing that no such claim exists under these statutes. A court may dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). This, of course, includes claims that are not cognizable under applicable law. *See, e.g., Sharp v. Fields,* No. 96-6094, 1996 WL 582724 (10th Cir. Oct. 10, 1996) (affirming dismissal under Rule 12(b)(6) where plaintiff "had not pled a cognizable constitutional claim").

Under the ADA, an "interactive process" is triggered when an employee "provid[es] notice to the employer of the employee's disability and any resulting limitations and express[es] a desire for reassignment if no reasonable accommodation is possible in the employee's existing job." *Smith v. Midland Brake, Inc.*, 180 F.3d 1154, 1171-72 (10th Cir. 1999) (en banc). Once the process is triggered, "both parties have an obligation to proceed in a reasonably interactive manner to determine whether the employee would be qualified, with or without reasonable accommodations, for another job within the company and, if so, to identify an appropriate reassignment opportunity if any is reasonably available." *Id.* at 1172. The "obligation to engage in the interactive process is inherent in the statutory obligation to offer a reasonable accommodation to an otherwise qualified disabled employee." *Id.; see also Ward v. Dep't of Natural Res.*, 216 P.3d 84, 94-95 (Colo. App. 2008) (applying ADA case law regarding interactive process in analyzing failure to accommodate claim under CADA).

While failure to engage in the interactive process "will often make it difficult to resolve a case for the employer on summary judgment . . . an employer's failure to follow the interactive process is not an independent basis for liability under the ADA." *Valdez v. McGill*, 462 F. App'x 814, 819 n.5 (10th Cir. 2012) (citation and quotations omitted); *see also Albert v. Smith's*

*Food & Drug Centers, Inc.*, 356 F.3d 1242, 1253 (10th Cir. 2004) ("Neither party may create or destroy liability by causing a breakdown of the interactive process."). Presumably the same is true under the CADA. *See Lee,* 2013 WL 5416972, at *4. Ms. Lucero cites a number of cases that discuss an employer's obligation to participate in the process, but none of them holds that the ADA or the CADA permits plaintiffs to bring independent claims for an employer's failure to do so. *See* Resp. at 9-12 [Doc. # 16]. Accordingly, I will dismiss Ms. Lucero's claim for failure to engage in the interactive process.

**C. Negligent Hiring, Retention, and Supervision Claim**

Ms. Lucero's third count alleges negligent hiring, retention, and supervision. Terumo moves to dismiss this claim under Rule 12(b)(6) for failure to state a claim. Such a claim is, in the abstract, cognizable under Colorado law, so I will review the more detailed standards applicable to Rule 12(b)(6) motions.

To withstand a Rule 12(b)(6) motion, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotations, brackets, and citations omitted). A plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In deciding a defendant's motion to dismiss under Rule 12(b)(6), a court assumes that all of the plaintiff's well-pleaded factual allegations are true and views them in the light most favorable to the plaintiff. *Iqbal*, 556 U.S. at 679; *Schwartz v.*

*Booker*, 702 F.3d 573, 579 (10th Cir. 2012). By contrast, the court does not accept legal conclusions as true. *Khalik v. United Airlines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Iqbal*, 556 U.S. at 677). "Accordingly, in examining a complaint under Rule 12(b)(6), [the court] will disregard conclusory statements [of law] and look only to whether the remaining, factual allegations plausibly suggest the defendant is liable." *Khalik*, 671 F.3d at 1191.

The parties appear to agree that Colorado law applies to Ms. Lucero's negligence claim. Under Colorado law, "[t]o establish a claim based on negligence, the plaintiff must show: (1) the existence of a legal duty to the plaintiff; (2) the defendant breached that duty; and (3) that the breach of the duty caused the harm resulting in damages to the plaintiff." *Keller v. Koca*, 111 P.3d 445, 447 (Colo. 2005). To establish the existence of a legal duty in a negligent hiring, retention, or supervision case, a plaintiff must show that the defendant had the "antecedent ability to recognize a potential employee's attributes of character or prior conduct which would create an undue risk of harm to those with whom the employee came in contact in executing his employment responsibilities." *Id.* at 448 (quotations and brackets omitted) (stating this standard for negligent supervision claim); *see also Moses v. Diocese of Colorado*, 863 P.2d 310, 327 (Colo. 1993) (stating this standard for negligent hiring and supervision claim); *Valles v. Gen-X Echo B, Inc,* No. 13-CV-00201-RM-KLM, 2013 WL 5861653, at *6 (D. Colo. Oct. 8, 2013) (dismissing claim for negligent retention where plaintiff failed to allege employer's "knowledge or constructive knowledge about any unreasonable risk of harm caused by [employee] to the [p]laintiff or to any other third party") (citation omitted), *report and recommendation adopted*, 2013 WL 5832745 (D. Colo. Oct. 30, 2013).

Terumo argues that Ms. Lucero has not adequately alleged the duty element of her claim. I agree. Ms. Lucero alleges that "Defendant has a duty to exercise reasonable care in its hiring

procedures." Compl. ¶ 56 [Doc. # 1]. She further alleges that "[her] supervisors, team leads, and administrators" were "unfit for their position and committed acts of discrimination, harassment, and retaliation against [her]"; that Terumo "knew or should have known about their unfitness"; and that Terumo "failed to exercise reasonable care in hiring, retaining, and supervising them." *Id.* ¶ 58. These allegations are conclusory and devoid of factual content. Ms. Lucero has not identified in what respect the employees were "unfit." In other words, she has not identified the issues in their backgrounds that "create[d] an undue risk of harm" to her. *Keller*, 111 P.3d at 448. She also has not alleged facts suggesting that Terumo had the "antecedent ability" to "recognize" whatever threat the employees posed to her. *Id.* In the absence of such allegations, Ms. Lucero fails to establish that Terumo owed her a legal duty. Therefore, Ms. Lucero's negligence claim fails and must be dismissed.

### D. Request for Leave to Amend

In response to Terumo's motion, Ms. Lucero states that "if the Court is inclined to dismiss [Ms. Lucero's second and third counts] . . . Plaintiff [should] first be given an opportunity to amend her complaint." Resp. at 16 [Doc. # 16]. If Ms. Lucero wishes to amend her complaint, she must file a motion. *See* D.C.COLO.L.CivR 7.1(d) ("A motion shall not be included in a response or reply to the original motion. A motion shall be filed as a separate document."); *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.,* 181 F.3d 1180, 1187 (10th Cir. 1999) (noting that a "single sentence, lacking a statement for the grounds for amendment and dangling at the end of her memorandum, did not rise to the level of a motion for leave to amend").

### III.  Conclusion

It is therefore **ORDERED** that Terumo's Motion to Dismiss Second and Third Claims for Relief [Doc. # 11] is **GRANTED** to the extent that Ms. Lucero's claim for "failure to engage in interactive process" and her claim for negligent hiring, retention, and supervision are **DISMISSED**.  The motion is otherwise **DENIED.**

DATED: June   10  , 2015, at Denver, Colorado.

BY THE COURT:

   s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE